IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JEAN PIERRE TULUMBUTA and CLAUDINE KAMANGO, <br><br> Plaintiffs, <br><br> v. <br><br> WILMINGTON FINANCE, INC., a Delaware corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; and WILSHIRE CREDIT CORPORATION, a Nevada Corporation, <br><br> Defendants. | Case No. 09 CV 4123 <br><br> District Judge Gottschall <br><br> Magistrate Judge Valdez |

**MEMORANDUM OF LAW OF DEFENDANT
WILMINGTON FINANCE, INC. IN SUPPORT OF MOTION TO
DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)**

Defendant Wilmington Finance, Inc. ("Wilmington") submits this Memorandum of Law in support of its motion to dismiss the Complaint of plaintiffs Jean Pierre Tulumbuta ("Mr. Tulumbuta") and Claudine Kamango ("Ms. Kamango") (collectively, the "Borrowers") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**INTRODUCTION**

In July of 2006, Wilmington provided the Borrowers with $208,800 to refinance the mortgage on their home. As part of the refinance, the Borrowers received more than $8,116.10 in cash from the closing, as well as substantial funds to pay off their prior mortgage. Now, more than three years after the loan was made, the Borrowers would like to nullify the transaction while still reaping its benefits. More specifically, the Borrowers ask this Court to permit them to keep the money received from Wilmington and, at the same time, remove the

mortgage from their home that secures repayment. The law, however, does not support the Borrowers' quest to render the lender an unsecured creditor and, as such, the Borrowers' Complaint should be dismissed.

## STATEMENT OF FACTS

On or about July 19, 2006, the Borrowers obtained a residential mortgage loan from Wilmington. In connection with the loan, the Borrowers executed an Adjustable Rate Note in the amount of $208,800 in favor of Wilmington (the "Loan"), and received $8,116.10 in cash from the transaction. (Attached as Exhibit 1 is a true and exact copy of the HUD-1 form completed in conjunction with the issuance of the Loan).[1] In addition to signing the Adjustable Rate Note, at the closing, the Borrowers also signed a Mortgage and two "Notice[s] of Right to Cancel," in which the Borrowers "acknowledge[d] receipt of two copies of NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth In Lending Disclosure Statement." (Attached as Exhibit 2 is a true and exact copy of the Adjustable Rate Note signed by the Borrowers; Attached as Exhibit 3 is a true and exact copy of the Mortgage signed by the Borrowers; and attached as Exhibit 4 are true and exact copies of the Notices of Right to Cancel signed by the Borrowers).[2]

By letter dated May 19, 2009, the Borrowers purported to notify defendants of their "election to cancel the subject transaction." (Complaint, ¶ 20). The Borrowers contend that more than twenty days have passed since Wilmington received their request to rescind the Loan,

---

[1] Wilmington requests that the Court consider the Borrowers' HUD-1 because it is central to their claims in this action. *See* discussion *infra* at Section I.

[2] Borrowers have attached unsigned copies of these documents to their Complaint. Wilmington requests that the Court consider the Borrowers' *signed* Note, *signed* Mortgage, and *signed* Notices of Right to Cancel because Borrowers suggest that those documents are incomplete and

and "[n]one of the defendants have acknowledged receipt of the election, nor returned any property to Plaintiffs, or taken steps to acknowledge the voided security." (Complaint, ¶¶ 21, 22). Although the Borrowers claim that they want to rescind the Loan, they have nowhere acknowledged, nor can they, that they are willing or able to tender repayment of the Loan proceeds. (*See generally,* Complaint).

## PROCEDURAL HISTORY

On July 21, 2009, the Borrowers filed their Complaint against Wilmington, Mortgage Electronic Registration Systems, Inc. ("MERS"), and Wilshire Credit Corporation. In their Complaint, the Borrowers contend that Wilmington failed to both inform them of their right to cancel and to provide the required disclosures of the costs for the loan. (Complaint, ¶¶ 17-19). Based on their alleged failure to receive the TILA disclosures and legible copies of the Mortgage and Notices of Right to Cancel, the Borrowers now seek statutory damages under TILA and rescission of the Loan**.**

---

illegible (*see* Complaint, ¶¶ 15, 16) and because these executed documents are central to Borrowers' claims in this action. *See* discussion *infra* at Section I.

## **LEGAL ARGUMENT**

**I.    THE COMPLAINT SHOULD BE DISMISSED AS TO WILMINGTON BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The United States Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) have significantly raised the bar for a plaintiff's complaint to survive a motion to dismiss. Under this recently heightened standard, a Court need no longer permit a complaint to proceed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic,* 550 U.S. at 561 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, (1957)). Instead, only those complaints that allege a "plausible claim for relief" will survive a motion to dismiss. *Ashcroft*, 129 S. Ct. at 1950.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 129 S. Ct. at 1949. Although "legal conclusions can provide a complaint's framework," absent well-pleaded factual allegations, such conclusions are insufficient to state a claim. *Banks v. Montgomery,* No. 3:09-CV-23-TS, 2009 U.S. Dist. LEXIS 49349, at *3 (N.D. Ind. June 11, 2009) (citing *Ashcroft,* 129 S. Ct. at 1950-51); *see also PTR, Inc. v. Forsythe Racing, Inc.,* No. 08 C 5517, 2009 U.S. Dist. LEXIS 48090, at *5 (N.D. Ill. June 9, 2009). Rather, the Court should "draw on its judicial experience and common sense." *Ashcroft*, 129 S. Ct. at 1950.

Although the Court's consideration of a motion under Rule 12(b)(6) is typically confined to the Complaint and its exhibits, there are exceptions to this rule. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Associates Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993) (collecting cases). As stated by this Court in

*ABN AMRO, Inc. v. Capital Int'l Ltd.,* No. 04-3123, 2007 WL 845046, *6 (N.D. Ill. Mar. 16, 2007): "The clearest cases for admitting extrinsic documents on a motion to dismiss are those where the plaintiff's complaint alleges a breach of contract or some other contract-related claim, and the plaintiff does not attach the contract to the complaint."

Based on these cases, and the allegations contained in the Borrowers' Complaint, Wilmington requests that the Court consider four documents that are referred to in the Complaint and that are central to the Borrowers' claims: (1) the HUD-1 form, which the Borrowers signed at the closing for the Loan; (2) the Adjustable Rate Note that the Borrowers signed; (3) the Mortgage that the Borrowers provided to Wilmington in connection with the Loan; and (4) the Notices of Right to Cancel that were signed by the Borrowers. Wilmington has attached true and accurate copies of these documents, maintained as part of its business records, to its Motion as Exhibits 1 through 4.

### A.  THE BORROWERS' CLAIM FOR STATUTORY DAMAGES UNDER THE TRUTH IN LENDING ACT IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

The Borrowers allege in their Complaint that Wilmington's violations of the disclosure requirements set forth by the Truth In Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), and its implementing regulation, Regulation Z, entitle them to statutory damages. Although 15 U.S.C. § 1640(a) does create a private cause of action for certain TILA violations, any action to recover statutory damages must be brought "within one year from the date of the occurrence of the violation." *See* 15 U.S.C. § 1640(e); *Basham v. Fin. Am. Corp.*, 583 F.2d 918, 927-28 (7th Cir. 1978).

The TILA does not define "occurrence of the violation," but it does clearly require that disclosures be made prior to the extension of credit. *See* 15 U.S.C. § 1639(b).

5

Because a credit transaction requiring disclosures under the TILA is complete when the lender and borrower contract for the extension of credit, it is axiomatic that the disclosures must be made sometime before this event occurs. *See Wachtel v. West*, 476 F.2d 1062, 1065 (6th Cir. 1973). If the disclosures are never made, "violation of the Act occurs, at the latest, when the parties perform their contract." *Id.*

Consistent with the plain language of the statute, and the regulations promulgated by the Federal Reserve Board, courts have universally interpreted the TILA as requiring that a claim for statutory damages be brought within one year of the date the disclosure violation occurred. *See, e.g., Brown v. Nationscredit Fin. Servs. Corp.* 349 F. Supp. 2d 1134 (N.D. Ill. 2005) (borrower was barred from bringing damages claims under the TILA because they were not brought within one year of making the loan); *see also Smith v. Fid. Consumer Disc. Co.,* 898 F.2d 896, 903 (3d Cir. 1990). Failure to bring an action for damages within the one-year limitation period bars recovery for damages under the TILA. *See Basham,* 583 F.2d at 927-28; *Schmit v. Bank United FSB,* No. 08 C 4575, 2009 WL 320489 (N.D. Ill. Feb. 6, 2009); *Briscoe v. Deutsche Bank Nat'l Tr.,* No. 08 C 1279, 2008 WL 4852977, at *4 (N.D. Ill. Nov. 7, 2008).

Here, the closing for the Loan occurred on July 19, 2006. The Borrowers did not file their Complaint until July 21, 2009, well beyond the one-year limitation period provided for by 15 U.S.C. § 1640(e). The Borrowers' claim for statutory damages should therefore be dismissed.

### B. THE BORROWERS' RESCISSION CLAIM FAILS FOR A MYRIAD OF REASONS.

Although this Court is required to begin its inquiry by assuming the truth of all well-pleaded facts, it must consider the veracity of the allegations made by the Borrowers and examine same. Here, the Borrowers' allegations should be rejected.

6

As an initial matter, the Borrowers' demand for rescission is fatally flawed. The Borrowers are only entitled to rescission if they can show that they did not receive the Notices of Right to Cancel. Here, the Borrowers cannot meet this burden because both Mr. Tulumbuta and Ms. Kamango received two copies of the Notice of Right to Cancel and expressly acknowledged so by signing those documents. (*See* Exhibit 4). In a misguided attempt to circumvent this fatal flaw in their Complaint, the Borrowers ask the Court to overlook their express acknowledgement in the Notices of Right to Cancel because the documents were allegedly incomplete and "illegible." However, as is evident from the attached signed copies of the documents, both Mr. Tulumbuta's and Ms. Kamango's Notices of Right to Cancel were *complete* and entirely *legible*. Absent any *legitimate* explanation as to why this Court should ignore these signed documents, the Borrowers' allegation that they did not receive two legible copies of the Notices of Right to Cancel does not meet the "plausibility" standard announced in *Bell Atlantic*. Therefore, their Complaint should be dismissed. 550 U.S. at 570.

Even if this Court were to conclude that a question exists as to whether the Borrowers received complete and legible copies of the Notices of Right to Cancel, Borrowers' rescission claim nonetheless fails because there remain serious doubts as to whether the Borrowers can tender repayment. When a borrower *properly* exercises his or her right of rescission, pursuant to 15 U.S.C. § 1635(b), the creditor must, within twenty days of receiving such notice, return to the borrower any money or property given as "earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). Once the creditor has complied with its statutory obligation, the borrower must, in return, tender the property to the creditor. *Id.*; 12 C.F.R. §226.23(d).

However, courts have routinely found that the TILA rescission right is not

7

automatic. Outside of seeking rescission within three days after the closing, a security interest only becomes void "when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, *or because the appropriate decision maker has so determined.* . . . Until such decision is made, the [borrowers] have only advanced a claim seeking rescission." *Am. Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) (emphasis added) (citing *Large v. Conseco Fin. Servicing Corp.,* 292 F.3d 49, *54-55* (1st Cir. 2002)).[3]

Under this "majority view," a borrower's unilateral notification of rescission does not *automatically* void the loan contract. When rescission is sought, the lender is not required to remove a mortgage lien in the absence of a borrower's tender of the loan proceeds. *See Powers v. Sims & Levin,* 542 F.2d 1216 (4th Cir. 1976); *Am. Mortgage Network,* 486 F.3d at 821. Congress did not intend "to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers." *Powers,* 542 F.2d at 1221. It is illogical to permit "[a] scheme that requires the creditor to act first by canceling its security interest without assurance that the consumer will do her part" — to do so would risk "leaving the creditor high and dry, an unsecured creditor forced to rely on the consumer's good graces and ability." *Velazquez v. Home Am. Credit, Inc.,* 254 F. Supp. 2d 1043, 1045 (N.D. Ill. 2003).

Rather, when "rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so

---

[3] Even the minority approach of the Eleventh Circuit, finding that rescission is automatic, holds that the voiding of a security interest may be judicially conditioned on the borrower's tender of amount due under the loan. *See Williams v. Homestake Mortgage Co.,* 968 F.2d 1141-42 (11th Cir 1992).

conditioned that the lender will be assured of receiving its legal due." *In re Cox,* 162 B.R. 191 (Bankr. C.D. Ill. 1993) (*citing Powers,* 542 F.2d 1216); *see also Am. Mortgage Network,* 486 F.3d at 821.

This Court has followed the majority view and has held that, where a borrower is unable to tender the loan proceeds and has failed to sufficiently notice that they are willing and able to tender payment, the claim is doomed and should be dismissed as a matter of law. *See, e.g., Hasan v. BNC Mortgage, Inc.*, 04 C 6987 (N.D. Ill. July 12, 2005) (granting defendant's motion to dismiss because "without a satisfactory representation that plaintiffs are willing and able to tender they cannot comply with the court's order, and rescission is unavailable"); *AFS Fin., Inc. v. Burdette*, 105 F. Supp. 2d 881, 882 (N.D. Ill. 2000) ("It is now well settled that a court, in the exercise of its equitable discretion, as confirmed by the last sentence of § 1635(b), can condition rescission upon tender of the amounts previously advanced, leaving the security interest in place until the tender is made."); *but see Lippner v. Deutsche Bank Nat'l Trust Co.*, 544 F. Supp. 2d 695, 702 (N.D. Ill. 2008). *See also Edelman v. Bank of Am. Corp.*, No. SACV 09-00309-CJC, 2009 WL 1285858 (C.D. Cal. April 17, 2009) ("[Plaintiff] has not stated a claim for rescission under TILA because she has failed to allege in her Complaint that she has tendered or intends to tender the borrowed funds back to Defendants.");.

In the instant case, the Borrowers, under the misconception that sending "a notice of rescission" to Wilmington automatically triggered the rescission, ask this Court to void their mortgage and award damages for Wilmington's failure to honor the Borrowers' election to rescind. Such a position cannot be supported. As stated above, it is well established that a borrower's unilateral notification of rescission does not *automatically* void the loan contract. Rather, the letter dated May 19, 2009 only acted to advance the Borrowers' claim for rescission. It is not until the Court makes a determination on the availability of rescission that Wilmington

9

would be required to rescind the Loan.  Accordingly, Wilmington's refusal to rescind the mortgage in response to the Borrowers' notice of rescission was proper and the Borrowers' claims for damages for this refusal should be dismissed.

Finally, the Borrowers failed to properly plead a right to rescission because the Complaint does not indicate any willingness and/or ability to tender payment.  Nowhere in the Complaint did the Borrowers plead a willingness and ability to pay back the loan proceeds.  In fact, the Borrowers' Complaint accomplishes the opposite effect—raising additional concerns over the Borrowers' ability to repay the loan proceeds.  The Borrowers' failure to plead that they are willing and able to return the funds and the fact that the loan funds were disbursed over *three years* ago support the conclusion that the Borrowers are incapable of returning the defendants to *status quo ante*.  Because the Borrowers have failed to sufficiently allege that they are willing and able to tender payment, the claim is doomed and should be dismissed as a matter of law.  *See*, *e.g., Hasan v. BNC Mortgage, Inc.*, 04 C 6987, slip op. at 2.

## **CONCLUSION**

For the foregoing reasons, Wilmington Finance, Inc. respectfully requests that the Court dismiss the Complaint of Jean Pierre Tulumbuta and Claudine Kamango.

Respectfully submitted,

s/s_____
Stephen A. Gorman
Attorney for Defendant
Wilmington Finance, Inc.

September 9, 2009

Stephen A. Gorman
325 N. LaSalle St., Ste. 450
Chicago, Illinois 60610
Telephone (312)-822-0200
Attorney No. 53098

Of Counsel:
Joy Harmon Sperling
Day Pitney LLP