UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEAN PIERRE TULUMBUTA and CLAUDINE KAMANGO, )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>WILMINGTON FINANCE, INC., a )<br>Delaware corporation, MORTGAGE )<br>ELECTRONIC REGISTRATION )<br>SYSTEMS, INC., a Delaware Corporation; )<br>and WILSHIRE CREDIT CORPORATION, )<br>a Nevada corporation, )<br>)<br>Defendants. ) | No. 09 C 4123<br><br>Judge Joan B. Gottschall |

## **MEMORANDUM OPINION & ORDER**

Plaintiffs Jean Pierre Tulumbuta and Claudine Kamango (collectively, "Plaintiffs") brought this suit arising from the 2006 refinance of a mortgage on their Streamwood, Illinois home. Plaintiffs allege that they were provided incomplete or illegible copies of the disclosures required by the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, and that they were wrongfully denied rescission of the refinanced loan. Plaintiffs named as defendants Wilmington Finance, Inc. ("Wilmington"), which according to the complaint was the relevant creditor in the refinancing, as well as Mortgage Electronic Registration Systems, Inc. and Wilshire Credit Corporation, each of which allegedly owns an interest in the subject loan.

Now before the court is Wilmington's motion for summary judgment and Plaintiffs' motion to strike the reply brief Wilmington submitted in support of its motion. For the reasons set forth below, both motions are denied.

I.  **BACKGROUND**

Plaintiffs reside at 1204 Alexander Place in Streamwood, Illinois 60107 (the "Property"). In July 2006, Plaintiffs refinanced the Property with a loan from Wilmington in exchange for Plaintiffs' execution of a mortgage in the amount of $208,800.00 in favor of Wilmington.

The transaction closed on July 19, 2006. Tulumbuta and a representative of Wilmington's closing agent, Netco Title ("Netco"), attended the closing.[1] Neither Wilmington nor Kamango were present.

Although Kamango did not attend the closing, both Plaintiffs signed several documents that were used in the closing. Two of those documents have since given rise to this litigation: the Notice of Right to Cancel ("Notice") and the TILA Disclosure Statement.

### A. The Notices

It is undisputed that both Plaintiffs signed two copies of the Notice and acknowledged receipt thereof. Above the Plaintiffs' signatures on the Notice form is an acknowledgment stating, "The undersigned each acknowledge receipt of two copies of NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth In Lending Disclosure Statement." (Wilmington's Mot. Ex. K.) The Notice informed Plaintiffs that they could cancel the transaction within three days from the last occurrence of (1) "[t]he date of the transaction, which is July 19, 2008," (2) "[t]he date [they] received [their]

---

[1] Before the closing, Wilmington provided a package of documents, the "Lender Closing Package," to Netco for its representative to use in the closing. The Lender Closing Package included the documents Plaintiffs would sign, a list of the enclosed documents, and instructions for the representative.

2

Truth in Lending disclosures," or (3) "[t]he date [they] received [the] notice of [their] right to cancel." (*Id.*)

### B. The Disclosure Statement

The Disclosure Statement consisted of four pages. Plaintiffs signed two of them, pages 1 and 4. Page 1 contains a box that identifies the "annual percentage rate," "finance charge," "amount financed," and "total of payments." (*See* Wilmington's Mot. Ex. L.) The box appears in the following format:

| **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate. | **FINANCE CHARGE** The dollar amount the credit will cost you. | **AMOUNT FINANCED** The amount of credit provided to you or on your behalf. | **TOTAL OF PAYMENTS** The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 11.251% | $532,482.18 | $204,218.58 | $736,700.76 |

Beneath the box are three additional columns, one of which sets forth a "payment schedule." *Id.* It appears as follows:

Payment Schedule:

| PMT(S) | AMOUNT(S) | BEGINNING DATE |
|---|---|---|
| 24 | $1,678.55 | 09/01/2006 |
| 6 | $1,977.26 | 09/01/2008 |
| 330 | $2,074.40 | 03/01/2009 |

Page 4 of the disclosure includes additional payment figures in a column titled "Total Estimated Monthly Payment." The format for this column is:

| Total Estimated Monthly Payment | | |
|---|---|---|
| Principal & Interest | $ | 1,678.55 |
| Total Real Estate Taxes | $ | 0.00 |
| Flood & Hazard Insurance | $ | 0.00 |
| Mortgage Insurance | $ | 0.00 |
| Total Other Impounds | $ | 0.00 |
| TOTAL MONTHLY PAYMENT | $ | 1,678.55 |

3

Similar to the Notice, the Disclosure Statement contains an acknowledgment above Plaintiffs' signatures. The acknowledgement provides, "I [WE] HEREBY ACKNOWLEDGE RECEIVING AND READING A COPY OF THIS DISCLOSURE." (*Id.*)

### C. The Dispute

Although Plaintiffs admit to having signed the Notices and Disclosure Statement, the parties dispute whether Plaintiffs received copies of them. After Tulumbuta finished signing his respective documents at the closing office, he returned home to bring the pages that required Kamango's signatures to Kamango (since she did not attend). Kamango signed those pages. Tulumbuta then went back to the closing office to deliver the executed copies to the closing agent. The closing agent gave Tulumbuta an envelope and told him that it contained copies of the documents he and Kamango had signed.

Wilmington contends that the envelope included two signed copies of the Notice and one copy of the Disclosure Statement for each plaintiff. Absent from the record, however, is any testimonial evidence from the agent who closed the transaction and presumably would have personal knowledge regarding the documents he or she did or did not put into the envelope.

Plaintiffs aver that Tulumbuta brought the envelope back home from the closing office and kept it in storage, untampered, until he gave it to their counsel before they filed suit in July 2009. (Pls.' Interrog. Resp. No. 16; Tulumbuta Dep. 44:19-45:4.) When Plaintiffs' counsel opened the envelope, it did not contain a copy of the Disclosure Statement or two complete copies of the Notice. (*Id.*) Instead, the envelope contained

unexecuted portions of each Plaintiff's Notice. (*See* 2d Am. Compl., Ex. C, ECF No. 131-1 at 20-23).

By letter dated May 19, 2009, Plaintiffs notified defendants of their "election to cancel the subject transaction." (Def.'s Mot. Ex. Q.) Plaintiffs ostensibly sought to cancel the loan "to allow them to refinance at a better interest rate." (Pls.' Statement of Additional Facts ¶ 6, ECF No. 204.)

On June 2, 2009, Wilmington received Plaintiffs' letter. Wilmington responded to the letter on June 8, 2009. In its response, Wilmington declined to honor the requested rescission, claiming that it was untimely.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## III. DISCUSSION

Under TILA, a borrower has the right to rescind a mortgage loan, but only within a limited period of time. 15 U.S.C. § 1635(a). Section 1635(a) specifies that a borrower

5

seeking to rescind a qualifying transaction must do so by "midnight on the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the [requisite] material disclosures. . . ." *Id.* "However, certain violations of TILA may extend the [borrower's] right to cancel" from three business days to three years. *Lippner v. Deutsche Bank Nat'l Tr. Co.*, 544 F. Supp. 2d 695, 700 (N.D. Ill. 2008); *see* 15 U.S.C. § 1635 (f); 12 C.F.R. § 226.23(a)(3).

It is undisputed in this case that Wilmington refinanced Plaintiffs' mortgage loan, and that the loan is subject to TILA. In their Second Amended Complaint, Plaintiffs allege that Wilmington committed three violations of TILA that extended their right to rescind from three days to three years. The alleged violations are Wilmington's failure (a) to provide each Plaintiff with two copies of the Notice, (b) to provide each Plaintiff with a Disclosure Statement that complies with TILA, and (c) to honor Plaintiffs' rescission request. Wilmington now moves for summary judgment on all of these alleged violations. The court addresses each one in turn.

### A. Wilmington's Alleged Notice Violation

Section 1635(a) of TILA "requires the creditor to provide the consumer with 'clear and conspicuous'[] notice of [the borrower's] right to rescind . . . within three days following the transaction." *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011) (citing 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b)(1)). "Regulation Z, issued by the Federal Reserve Board to implement TILA, elaborates on this rule by requiring the lender to give the consumer *two* copies of the notice of his three-day right to cancel at closing." *Marr*, 662 F.3d at 964-65 (citing 12 C.F.R. § 226.23(b)(1) (emphasis in original)).

Wilmington contends that, contrary to their allegations, Plaintiffs each received two copies of the Notice and signed a written acknowledgement of receipt at closing. Wilmington correctly points out that a borrower's written acknowledgment of receipt of the Notice creates a presumption of delivery. *See Briggs v. Provident Bank*, 349 F. Supp. 2d 1124, 1129 (N.D. Ill. 2004).

This presumption, however, is rebuttable. Where a borrower testifies or submits other evidence to show that the acknowledgement was incorrect, courts have rejected lenders' attempts to move for summary judgment on the borrower's TILA claim on the basis of the acknowledgment. *See, e.g., Iroanyah v. Bank of Am., N.A.*, 851 F. Supp. 2d 1115, 1122 (N.D. Ill. 2012) ("The record does not indisputably answer, one way or the other, whether the Iroanyahs received two copies of the Notice for each loan at the closing—Defendants point to the Iroanyahs' written acknowledgment that they received two copies, while the Iroanyahs point to evidence that the envelope they received at the closing contained only one copy. It follows that neither side is entitled to summary judgment on the question whether a Notice violation occurred.") (citations omitted); *accord Christensen v. Fifth Third Bank*, No. 10-cv-2177, 2012 U.S. Dist. LEXIS 153190, at *9-10 (N.D Ill. Oct. 24, 2012).

Here, a genuine issue of material fact exists as to whether each Plaintiff received two copies of the Notice. There is no dispute that Wilmington's closing agent gave Tulumbuta an envelope. Wilmington, however, repeatedly asserts that the envelope included two sets of copies of the Notice for each plaintiff, but Wilmington does not offer any evidence to prove this assertion. The only evidence from someone who has personal knowledge of the closing comes from Tulumbuta, who testified that he took the envelope

7

home, did not disturb its contents, and later delivered it to his attorney. When Tulumbuta's attorney reviewed the documents inside the envelope, he saw that there were no copies of the Disclosure Statement and only unexecuted portions of each Plaintiff's notice. Construing these facts in a light most favorable to Plaintiffs, the court cannot conclude from the record that Wilmington is entitled to summary judgment.

Wilmington argues that, even if its closing agent failed to provide each Plaintiff with two copies of the Notice, Wilmington prevails because any error in copying was a bona fide error under 15 U.S.C. § 1640(c). This subprovision of Section 1640 provides a defense to violations of TILA brought under Sections 1635 or 1640 where "the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Id.* Subprovision (c) further indicates that "[e]xamples of bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error." *Id.*

Plaintiffs object to Wilmington's assertion of the bona fide error defense as untimely. Wilmington acknowledges that it pled three affirmative defenses in response to the Second Amended Complaint, and that none of them in the bona fide error defense. But Wilmington claims that it put Plaintiffs on notice of the defense when it argued in its motion to dismiss briefing that its closing agent simply must have misfed the Notice when making copies for Plaintiffs. Plaintiff counter that there is a difference between suggesting a fact in a brief on a motion to dismiss and amending an answer to add an

affirmative defense in accordance with the Federal Rules of Civil Procedure. Plaintiffs argue that Wilmington has waived the bona fide error defense by formally raising it for the first time in its motion for summary judgment.

Two issues emerge from Wilmington's assertion of a new defense on summary judgment: (1) whether Wilmington has waived the defense; and (2) whether the defense would entitle Wilmington to summary judgment.

As a threshold matter, the court finds that Wilmington has not waived the bona fide error defense. It is true that Federal Rule of Civil Procedure 8(c) "requires affirmative defenses to be raised in the pleadings." *See Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). But "a delay in raising an affirmative defense only results in waiver if the other party is prejudiced as a result." *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 633 (7th Cir. 2010); *see* Curtis, 436 F.3d at 711 (holding that a plaintiff was not prejudiced by a defendant's first-time assertion of an affirmative defense in a motion for summary judgment because the plaintiff had an opportunity to "confront[ ] the defense in responding to the motion"). Here, Plaintiffs claim they were prejudiced because they were unable to take discovery on Wilmington's newly asserted defense. While Plaintiffs' concern may be valid, it ultimately does not make a difference at this stage because the lack of discovery cuts both ways: Wilmington has not submitted the evidence necessary to establish the defense on summary judgment.

Wilmington predicates its bona fide error defense on two facts. One is that it sent instructions to its closing company for it to use in closing the transaction. The other is that Plaintiffs admit to having signed the Notice and Disclosure Statement. But these facts are insufficient to bring Wilmington's TILA violations within the safe harbor

provision of Section 1640(c) as a matter of law. To avail itself of the bona fide error exception, Wilmington needed to "show not only that the error was unintentional and clerical in nature, but also that it maintained procedures reasonably adapted to prevent the type of error that occurred." *Horton v. Country Mortg. Servs.*, No. 07-cv-6530, 2010 U.S. Dist. LEXIS 67, at *15 (N.D. Ill. Jan. 4, 2010); *see also Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 764 (7th Cir. 2006) (rejecting assertion of bona fide error defense because defendant failed to demonstrate that it "had [procedures] in place to prevent the type of mix-up that occurred").

Here, Wilmington has offered no evidence other than the packet of closing papers it sent to its closing agent to show that maintained *any* procedures—much less the procedures needed to verify that its closing agents comply with TILA in a given transaction. In fact, Wilmington has not even provided an affidavit from the representative who closed Plaintiffs' transaction or the company who employed the representative, Netco Title. For the bona fide error defense to apply, Wilmington at least had to answer through evidence how its agent could have provided Plaintiffs with an envelope containing only a single miscopied Notice form.

Moreover, the court questions whether the bona fide error defense could act to insulate Wilmington from liability for its alleged violations of TILA. The Seventh Circuit has "repeated[ly] direct[ed] [district courts] to hold lenders to hypertechnical compliance with TILA . . . ." *Laseter v. Climateguard Design & Installation, LLC*, 931 F. Supp. 2d 862, 869 (N.D. Ill. 2013) (citing *Hamm*, 506 F.3d at 529). Wilmington makes no attempt to reconcile its invocation of the bona fide error defense with the "hypertechnical" standard that applies to alleged TILA violations in this circuit.

Although the court need not resolve this issue, other courts have determined that Section 1640(c) does not immunize a lender from the types of TILA violations alleged here. *See Horton*, 2010 U.S. Dist. LEXIS at *15-16 ("In light of TILA's purpose, this court cannot find as a matter of law that failure to deliver two copies of a notice to cancel and one copy of a disclosure statement can be a clerical error such that [a lender] may be excused from TILA liability pursuant to the bona fide error exception); *Abubo v. Bank of New York Mellon*, 977 F. Supp. 2d 1037, 1047-1050 (D. Hawaii 2013) (canvassing federal case law, including Seventh Circuit authority, in rejecting application of bona fide error defense to a lender's failure to comply with disclosure requirements).

### B.  Wilmington's Alleged Disclosure Statement Violation

15 U.S.C. § 1638(a)(6) requires a lender to disclose "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments. . . ." The Seventh Circuit has construed this provision to require a lender "to state clearly on the Disclosure Statement either the due dates or period of payments scheduled." *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525, 529 (7th Cir. 2007).

*Hamm* involved two borrowers who filed separate suits against their original lender for failing to state the payment period in their TILA Disclosure Statements. *Id.* at 526. *See Hamm v. Ameriquest Morg. Co.*, No. 05-cv-227, 2005 U.S. Dist. LEXIS 21755 (N.D. Ill. Sept. 27, 2005); *Jones v. Ameriquest Mortg. Co.*, No. 05-cv-0432, 2006 U.S. Dist. LEXIS 3788 (N.D. Ill. Jan. 31, 2006). The two district courts that had resolved each individual plaintiff's claims reached different conclusions: one granted summary judgment to the lenders on the borrower's "theory of liability related to the payment periods," *Hamm*, 2005 U.S. Dist. LEXIS 21755, at *12, while the other granted summary

11

judgment to the borrower on a TILA claim based on the same theory of liability. *Jones*, 2006 U.S. Dist. LEXIS 3788, at *28-29.

At issue on appeal was the language in the Disclosure Statement, which both plaintiffs had signed, related to the payment schedule. In particular, the disclosure (1) "listed a specific date as the due date for the first payment and another specific date for the final payment" and (2) identified "the number of payments" and "amount of payments," as shown in the following illustration:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|
| 359 | $ 541.92 | 03/01/2002 |
| 1 | $ 536.01 | 02/01/2032 |

*Hamm*, 506 F.3d at 527.

After reviewing the table in the context of the whole Disclosure Statement, the Seventh Circuit recognized that it would not take much for a borrower "to realize that the time between the first entry in the third column and the last entry is just shy of thirty years, or 360 months." *Id.* Nevertheless, the court explained, what matters in assessing a lender's TILA violation is not whether "the borrower in a particular transaction made the right assumptions about the terms and documents presented to her. . . ." *Id.* at 529. Rather, "the question is whether TILA is satisfied if the form provides only enough information from which the consumer might infer either the due dates or the payment period." *Id.*

With the issue framed in this light, the Seventh Circuit resolved the conflicting results in *Jones* and *Hamm* by finding that the lenders had, indeed, "committed a technical TILA violation by failing explicitly to state the payment period of [the

12

borrowers'] loans on the Disclosure statement." *Id.* at 529-530. The court had no "doubt that many (or most) borrowers would understand that a mortgage with 360 payments due over approximately 30 years contemplates a payment by the borrower each month during those 30 years." *Id.* at 530. But the lender's Disclosure Statement did not inform the borrowers "that the transaction [was] for a '360-month loan' or anything similar." *Id.* All a borrower knew for certain from the Disclosure Statement was that (i) 359 payments needed to be made, (ii) "the first one [was] due on a particular date," and (iii) "after all 359 payments [were] made, one more payment in a slightly different amount [would] be due on another particular date." *Id.* In the court's view, "A borrower reading this form alone would have to make assumptions and take some steps in order to determine . . . that her payments were evenly spaced over the 30 years and that each payment was due at the first of the month." *Id.*

The concern, however, was that a borrower might not make the necessary assumptions. For example, a borrower could have construed the lender's Disclosure Statement as allowing her to "postpone payments 2-359 until approximately the last year of the loan and make one payment per day." *Id.* Although this possibility might "seem unrealistic," "[t]he key point is that [a] borrower should not have to make any assumptions; she should be told her payment period in explicit terms." *Id.* at 532. Because the lender's Disclosure Statement required the borrowers to make such assumptions, the court found that it violated TILA.

Given this guidance from *Hamm*, the court cannot find that Wilmington is entitled to summary judgment on Plaintiffs' TILA claim for violations of Section 1638(a)(6). As an initial matter, Plaintiffs allege that Wilmington did not provide them with copies of the

13

Disclosure Statement. According to Plaintiffs, the envelope Wilmington's closing agent gave to Tulumbuta was missing not only the completed Notices, but the Disclosure Statement as well. Viewing the facts in a light most favorable to Plaintiffs, the court finds a genuine issue of material fact exists as to whether they received copies of the Disclosure Statement from Wilmington's closing agent. *See Horton*, 2010 U.S. Dist. LEXIS 67, at *12-14 (denying lender's motion for summary judgment on borrower's TILA claim stemming from lender's purported failure to provide copy of disclosure).

Second, Plaintiffs allege that the copy of the Disclosure Statement Wilmington produced in discovery contains material deficiencies that independently violate TILA, as construed in *Hamm*. The court agrees with Plaintiffs. Page 1 of the Disclosure Statement indicates the number of payments, the payment amounts, and the due dates for three payments, but it does not specify "either the frequency of payments or the specific due date for each individual payment." *Iroanyah v. Bank of Am., N.A.*, 851 F. Supp. 2d 1115, 1122 (N.D. Ill. 2012) (denying lender's motion for summary judgment on borrower's TILA claim arising from lenders' non-complaint disclosure statement). Although page 4 uses the word "monthly" to describe a payment, that page confusingly informs the borrower that the "Total Estimated Monthly Payment" is $1,678.55, notwithstanding the information on the first page showing that the payment amounts vary. Moreover, the reference to some of the payments being "monthly" was outside of the "Federal Box" located on page 1, "where the TILA-mandated disclosures are typically listed." *See Laseter*, 931 F. Supp. 2d at 867; *Leathers v. Peoria Toyota-Volvo*, 824 F. Supp. 155, 158 (C.D. Ill. 1993) ("Compliance with [the TILA] regulations is satisfied when the creditor

places all the disclosures on one side of one document (unless there is not enough room) or groups the disclosures together within the Federal Box.").

### C. Wilmington's Alleged Failure to Rescind

"Under TILA, if a borrower timely elects to rescind the loan, within 20 days, the creditor must return to the borrower any earnest money, down payment, or otherwise, and take all necessary action to reflect termination of any security interest created by the transaction." *Christensen*, 2012 U.S. Dist. LEXIS 153190, at *16-17 (citation and quotation marks omitted). A creditor's failure to take these steps in response to a timely rescission election by the borrower constitutes a violation of TILA. *See* 15 U.S.C. § 1635(b).

Here, there is no dispute that Plaintiffs attempted to rescind after the three-day time frame that TILA prescribes elapsed. Plaintiffs argue that their request automatically obligated Wilmington to rescind the transaction, but surely that cannot be case. *See Christensen*, 2012 U.S. Dist. LEXIS 153190, at *17 (only a timely rescission request "trigger[s]" a creditor's "obligation under § 1635(b)"); *Iroanyah v. Bank of Am., N.A.*, 851 F. Supp. 2d 1115, 1124 (N.D. Ill. 2012) ("A rescission notice is invalid, and thus cannot possibly effectuate a complete rescission, unless it is timely and unless the creditor did something that actually gives the borrower a right to rescind."). Otherwise, any meritless, untimely request to cancel a qualifying transaction would mandate rescission. Instead, a more sensible interpretation of Section 1635(b) is that Wilmington's refusal to rescind would provide an additional ground for statutory damages if Plaintiffs can establish through a separate violation that they were subject to the three-year time frame and thus submitted a timely cancellation request. *Id.* at 1128

15

("A creditor's failure to properly respond to a valid rescission notice gives rise to a damage claim.")

As explained above, issues of fact remain as to whether Wilmington violated TILA so as to extend Plaintiffs' rescission period to three years. Consequently, it is possible that the longer cancellation window applies, in which case Wilmington's refusal to honor Plaintiffs' cancellation request would constitute an additional violation. Wilmington's motion for summary judgment is therefore denied as to Plaintiffs' claim for a violation of Section 1635(b).

### D. Plaintiffs' Ability to Tender

Finally, Wilmington asserts that regardless of whether it violated TILA, the court should grant its motion for summary judgment because Plaintiffs cannot immediately pay back the principal to complete their requested rescission.

Plaintiffs respond that they will be able to make the necessary tender if the court rules in their favor after a bench trial. From Plaintiffs' perspective, it is immaterial whether they can tender the principal now, since they would have additional time to raise funds between the court's ruling on Wilmington's motion for summary judgment and trial. Plaintiffs also assert that Wilmington puts the proverbial "cart before the horse" because a determination as to whether borrower can tender comes after, not before, an adjudication of the lender's alleged TILA violation.

The court again agrees with Plaintiffs. Requiring a borrower to prove his or her ability to tender before the creditor's underlying TILA violation has been proven would be premature. Here, not only could Plaintiffs save additional funds between now and any entry of judgment against Wilmington. A finding of liability would also decrease the

amount that Plaintiffs owe. "[W]hen a lender is found to have violated TILA, a plaintiff in a private action is entitled to recover from the lender "any actual damage sustained by such person as a result of the failure"; "twice the amount of any finance charge in connection with the transaction"; or "in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000 . . . .""). *Christensen v. Fifth Third Bank*, No. 10-cv-2177, 2014 U.S. Dist. LEXIS 7577, at *83-84 (N.D. Ill. Jan. 22, 2014 (citing 15 U.S.C. § 1640(a)(1), (2)(A)(I), (2)(A)(iv)). In addition, "[w]hen an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission." 15 U.S.C. § 1635(b).

A more prudent course is for the parties to meet and confer to determine the amount Plaintiffs will have to tender to effect the rescission, if Plaintiffs prevail at trial. *See Id.* at *3. The court then would assess any disagreements over the tender amount or Plaintiffs' ability (or inability) to pay it.

### IV. PLAINTIFFS' MOTION TO STRIKE WILMINGTON'S REPLY BRIEF

Plaintiffs move to strike Wilmington's reply brief to preclude Wilmington from raising the bona fide error defense. However, Plaintiffs offer no legal support to strike Wilmington's entire brief. Plaintiffs have already asked the court to find that Wilmington waived the defense. As discussed above, although Wilmington failed to raise the defense in its answer, there has been no waiver. Plaintiffs' motion is denied.

17

## V. CONCLUSION

Wilmington's motion for summary judgment is denied. Wilmington has until March 23, 2015, to amend its answer to add the bona fide error defense. Discovery shall be reopened for the limited purpose of allowing Plaintiffs to conduct discovery into Wilmington's assertion of the bona fide error defense. Status set for April 15, 2015 at 9:30 a.m. The parties should present an agreed plan for this limited reopening of discovery.

The court offers one final thought in closing. To borrow a line from Judge Keys, who dealt with a similar set of facts in a TILA dispute, "this case cries out for a settlement and resolution by the parties." *Christensen*, 2012 U.S. Dist. LEXIS 153190, at *20. Plaintiffs contend that they seek rescission to refinance their mortgage loan. They stress that they can make their monthly mortgage payments. Wilmington is open to rescinding the transaction, but only if Plaintiffs make a lump sum payment. The court strongly encourages the parties to meet and confer either before or while they prepare the joint pretrial order to discuss settlement. Or, if the parties wish, they may call the court to refer the case to Magistrate Judge Valdez for a settlement conference.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 16, 2015